UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    LIA A. WOOD,                                        Case No. 08-42190
                                                                 Chapter 7
                                                                 Hon. Walter Shapero

                Debtor.
_____/

**<u>OPINION ON TRUSTEE'S § 707(b)(3) MOTION</u>**

**I. Introduction**

       The matter before the Court is the United States Trustee's ("Trustee") Motion to Dismiss this case for abuse pursuant to 11 U.S.C. § 707(b). A hearing was held and the Court took the matter under advisement.

       The Trustee argues that if the Debtor did not partially fund her non-filing spouse's voluntary 401(k) plan with $422.63 a month, or subsidize her non-filing spouse's share of the family expenses to pay his personal creditors $686.00 a month, the Debtor would be able to pay almost half of her debt within five years in a chapter 13 plan, and therefore Debtor's chapter 7 case must be dismissed as an abuse. The Debtor argues that (1) considering her age and lack of retirement resources, maintaining her 401(k) plan is appropriate, or alternatively, that (2) even if the 401(k) contribution was eliminated, a chapter 13 plan could not be effective, and (3) her recent medical debt bears importantly on the issue.

       For the following reasons, the Court denies the Trustee's Motion to Dismiss.

**II. Facts**

       The Debtor filed her chapter 7 petition on January 31, 2008. She is 54 years old and has been employed as a logistics manager for the last four years. Her non-filing spouse is approximately 49 years old, and has been employed as a bakery manager for the last five years. Schedule I lists their combined family net monthly income as

1

$5,441.34. Their combined annual gross income is just over $98,000.00. They have no dependents. Schedule E lists primarily consumer credit card debt, totaling $125,256.65, which extends back to 1991. The bulk of those debts were initially incurred in 1995 and 1998.

Debtor and her husband are currently employed. However, Debtor was unemployed from January 2003 through December 2003, and her husband was unemployed from June 2002 through January 2003. Debtor testified that approximately six months before she filed her petition her husband took out a loan (the balance due on which is some $26,000.00) to pay off all of the credit card debt they had accrued - mostly during those unemployed periods. Her husband is solely legally obligated to repay that particular loan debt.

Debtor's original Schedule J disclosed monthly expenses of $5,440.95, and a monthly net surplus of $0.39. On March 12, 2008, Debtor filed Amended Schedules B, C, and J. Amended Schedules B and C revised the amount the Debtor received for her 2007 income tax refund. Amended Schedule J disclosed monthly expenses of $5,441.18, and a monthly net surplus of $0.16. Listed expenses on the original Schedule J, as compared to the Amended Schedule J, are the following:

| Expense | Original Schedule J | Amended Schedule J |
| --- | --- | --- |
| Mortgage Payment | $1,584.34 | Same |
| Utilities | $595.00 | " |
| Home Maintenance | $100.00 | " |
| Food | $400.00 | " |
| Clothing | $100.00 | " |
| Laundry and Dry Cleaning | $60.00 | " |
| Medical and Dental Expenses | $40.00 | " |
| Transportation | $215.00 | " |

| | | |
|---|---|---|
| Entertainment | $0.00 | $84.00 |
| Charitable Contributions | $100.00 | Same |
| Insurance (Home Owner) | $0.00 | $63.58 |
| Insurance (Auto) | $100.00 | $214.50 |
| Property Taxes | $375.00 | Same |
| Auto Payments | $387.08 | " |
| Second Auto Payments | $261.00 | $0.00 |
| Second (Equity) Mortgage | $306.68 | Same |
| Personal Grooming | $100.00 | " |
| Pet Expense | $30.00 | " |
| Husband's Debt Payments | $686.00 | " |

### III. Analysis

A petition for relief filed under chapter 7 is subject to dismissal if the granting of relief would be an abuse. 11 U.S.C. § 707(b)(1). If the Debtor's income less expenses meets or exceeds the threshold established by Congress, abuse is presumed and only a showing of special circumstances will rebut that presumption. 11 U.S.C. § 707(b)(2)(B). In cases like this one in which the presumption of abuse does not arise or is rebutted, the Court is directed to consider whether the Debtors filed the petition in bad faith or whether, under the totality of the circumstances, granting relief would be an abuse under chapter 7. 11 U.S.C. § 707(b)(3).

In the case of *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989), and more recently in *Behlke v. Eisen*, 358 F.3d 429, 433 (6th Cir. 2004), the Sixth Circuit Court of Appeals stated the totality of the circumstances requires a determination of whether the debtor acted dishonestly in relation to Debtor's creditors; or whether the debtor is needy of chapter 7 relief. Either factor or both together may be cause for dismissal. *Id.* As the

3

movant, the Trustee has the burden of establishing, by a preponderance of the evidence, the applicability of this ground for dismissal. *In re Beckerman*, 381 B.R. 841, 844 (Bankr. E.D. Mich. 2008).

In *Krohn*, the court set forth some of the relevant and non-exclusive factors determining whether a debtor is needy, i.e.: (1) the Debtor's ability to repay his debts out of future earnings, (2) whether the debtor enjoys a stable source of future income, (3) whether the debtor is eligible for adjustment of debts through chapter 13 of the Bankruptcy Code, (4) whether there are state remedies with the potential to ease the debtor's financial predicament, (5) the degree of relief obtainable through private negotiations, (6) whether the debtor's expenses can be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities. *Id.* In this case, the Trustee primarily points to Debtor's 401(k) plan payments and the payments to creditors of the non-filing spouse as the bases for its motion.

**A.     Ability to Pay**

The Trustee argues that the decision in *Krohn* stands for the proposition that the first factor <u>alone</u>, the ability to pay, may be sufficient to warrant dismissal. *Id.* This Court's view of the meaning of that court's language was set forth in the case of *In re Shelby*, No. 06-48745 (Bankr. E.D. Mich. July 25, 2007). In determining a debtor's ability to pay, some courts examine whether there would be sufficient disposable income to fund a chapter 13 plan. *Behlke v. Eisen*, 358 F.3d 429, 434 (6th Cir. 2004). Disposable income is "income received by the debtor . . . [which is not] reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). There are divergent views among bankruptcy courts as to whether 401(k) contributions are disposable income.

This Court addressed that issue in the case of *In re Beckerman*, 381 B.R. 841 (Bankr. E.D. Mich. 2008). Instead of broadly interpreting *Behlke* and *Harshbarger*[1], this Court's narrower interpretation recognized that "Sixth Circuit precedent does not require that in all instances voluntary contributions to a retirement plan are not necessary

---

[1] *Harshbarger v. Pees*, 66 F.3d 775 (6th Cir. 1995)

4

expenses for purposes of determining disposable income in a hypothetical chapter 13 plan." *Id.* at 848. Therefore, "401(k) contributions must be determined on a case-by-case basis looking at the totality of the Debtor's individual circumstances." *Id*. This Court found the following factors were relevant in determining whether voluntary retirement contributions were necessary to the maintenance or support of the debtor: (a) the amount of the debtor's existing retirement savings; (b) the age and time left until retirement; (c) the level of yearly income; (d) the overall budget; (e) the amount of monthly contributions; (f) the needs of any dependents; and (g) any other constraints which make it likely that retirement contributions are reasonably necessary expenses for the Debtor. *Id.*

In the present case, the Debtor testified that neither she nor her spouse had a pension from their employer and they had no additional retirement savings besides her husband's 401(k) plan, which had a balance of $9,700.00. Her husband's $422.63 monthly 401(k) contribution accounts for nearly 8% of their combined monthly net income of $5,441.34. As noted, their combined annual gross income is just over $98,000.00, Debtor is 54 years old and her husband is approximately 49, but the Debtor has not indicated when she or her husband plan on retiring. The Debtor does not list any dependents. Also, the Debtor provided evidence pertaining to possibly ongoing needed medical procedures, which is something that should be taken into consideration.

In conclusion, the Court finds the 401(k) contributions are reasonably necessary for the maintenance and support of the Debtor and may be excluded in this case from disposable income. That conclusion however, is not dispositive of the Debtor's "neediness." An overall determination of whether the Debtor is needy requires an inquiry into her monthly expenses as well.

**B. Other Factors**

5

1. <u>Expenses Generally</u>

The Court finds that there is not a sufficient opportunity for belt tightening (i.e. expense reduction) which would produce sufficient additional income to fund a chapter 13 plan. Overall the Debtor's expenses reveal a $0.16 monthly surplus, which could not materially pay down much of the $125,256.65 unsecured debt in this case. Granted that Debtor's and her spouse's combined gross income figure gives one pause. However, when one reviews the various Schedule J expenses (other than the items specifically otherwise herein referred to) one cannot come to the conclusion that they are excessive to the point of supporting a conclusion of abuse, and indeed the Trustee does not so argue. There is no indication that relief could be obtained through private negotiations with creditors, and the Court has not been made aware of any state remedies which could materially ease the Debtor's financial predicament.

It is true that the Debtor and her husband have worked for their current employers for four and five years respectively; and there was no indication at the time of trial their employment was in jeopardy, or that they will not continue to produce a relatively equivalent future income. However, on balance the Court finds that these factors do not require a different conclusion in this matter. Therefore as relates to the Debtor's expenses generally, the Court finds there is not an abuse under chapter 7.

2. <u>Husband's Debts</u>

The Trustee argues that the $686.00 monthly expense to pay her husband's debts listed on Schedule J is an abuse because the Debtor is in effect picking and choosing which creditors to pay, and, due to such, Debtor is subsidizing her husband's share of the family expenses. The Trustee argues that absent this, the Debtor could pay almost half of her own debt in a five year chapter 13 plan.

The Debtor testified that (1) the majority of the $686.00 is used to pay her husband's $26,530.34 Capital One loan debt, which was incurred to pay off all of their previous credit card debt; and (2) the remainder of scheduled debt is debt she incurred that her husband did not know then about.

6

This Court dealt with the issue of a non-filing spouse's debt in the case of *In re Grulke*, No. 07-53098 (Bankr. E.D. Mich. October 14, 2008), where the non-filing husband's income was completely consumed by his bills, and left the debtor to pay for the remaining portion of his bills and all of the couple's living expenses. This Court in *Grulke* Court stated,

> the Debtor and her spouse live together and share normal everyday living expenses, each has earnings, and they have separate as well as joint obligations which appear to have been paid out of their joint incomes. The circumstances of the family unit as a whole cannot be so separated or ignored as to make their existence irrelevant to the inquiry in the filing spouse's case. One can understand why the Debtor's husband might not wish to be in bankruptcy himself and that of course is his legal right; but where, as here, the practical effect of exercising that right produces a result beneficial to his separate creditors at the expense of those of the Debtor, that is a fact that should be given some relevance and weight in examining the totality of the circumstances.

*Id.* at 6.

This case is distinguishable from *Grulke* primarily because here, when the non-filing husband's individual debt obligations are deducted from his income, there is still a considerable amount of income left to contribute to living expenses. The schedules and testimony reveal that the husband's $3,866.68 monthly gross income with deductions such as taxes ($740.98); insurance ($429.61); 401(k) contribution ($422.63); and the loan/credit card debt in dispute ($686.00), leaves the husband with $1,587.46 to contribute to family expenses. The fact that the husband's debt arose from paying off all the credit cards (debts that apparently were originally jointly incurred) does not alter the analysis, because the husband is currently the only person legally obligated to make payments on that debt.

3. <u>Housing Expense</u>

The Court recognizes that the debtor may allocate a reasonable amount of money toward living expenses, including housing, even in the face of surrendering her home. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D. Ohio 2007). Whether the amount so allocated by the debtor is reasonable is the question. In the case of *In re Gilbert*, No. 07-62176 at 3 (Bankr. E.D. Mich. July 10, 2008), this Court reasoned that "a chapter 7 bankruptcy may be designed or appropriate . . . [in situations where] real estate was purchased in a rising market, [and] was mortgaged to a great percent of its then value, and was held with the expectation that a rising market would accrue to their financial benefit . . . ." This Court frowns upon causing an otherwise non-abusive debtor to surrender their home because of the vast unknown market probabilities, financial outcomes attendant to selling the home and buying/renting a new home under current economic conditions, and particularly where there is no indication that the debtor bought the home in bad faith relatively close to the time of filing bankruptcy. Here, the Debtor bought the house in 2003 and acquired a second home equity mortgage in 2005. This Debtor shares the economic housing woes of the day with many others and absent factors militating otherwise (facts which do not exist here) it would be inappropriate to penalize them on that score.

### IV. Conclusion

For the foregoing reasons, the Court denies the Trustee's Motion to Dismiss.

**Signed on February 05, 2009**

                **/s/ Walter Shapero**
                **Walter Shapero**
                **United States Bankruptcy Judge**